O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK DWAYNE HOUSTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. EDCV 12-505-OP<br><br>MEMORANDUM OPINION; ORDER |

　　The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

　[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 5, 11.)

　[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 4 at 3.)

# I.
# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly determined at Step 2 that Plaintiff's somatoform disorder was not a severe medically determinable impairment;

(2) Whether the ALJ properly considered Plaintiff's credibility;

(3) Whether the ALJ properly considered the opinions of Dr. Huang, Plaintiff's treating physician;

(4) Whether the ALJ erred by not accounting for Plaintiff's gait disturbance and fine manipulation limitation in assessing his residual functional capacity ("RFC"); and

(5) Whether the ALJ erred by not consulting a medical expert at the time of the hearing, especially considering there is a date last insured in the past.

(JS at 2-3.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The

Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of alcohol induced mood disorder; alcohol abuse; depression; anxiety; post ankle fracture; progressive ataxia; and degenerative disc disease. (Administrative Record ("AR") at 14.) The ALJ found Plaintiff had the RFC to perform a range of light work with the following limitations: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; restricted from working at heights or balancing; can occasionally climb stairs; prohibited from climbing ladders or ramps; no work around moving or dangerous machinery, fire, or water; and limited to simple and routine tasks. (Id. at 16.)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff is capable of performing such occupations as electronic worker (Dictionary of Occupational Titles ("DOT") 726.687-010); packing machine operator (DOT 920.685-078); and house cleaner (DOT 323.687-014). (AR at 24.)

**B.    Substantial Evidence Supports the ALJ's Finding That Plaintiff's Alleged Somatoform Disorder Is Not a Medically Determinable Impairment.**

The ALJ found that Plaintiff's somatoform disorder did not amount to a medically determinable impairment. The ALJ explained:

> *The undersigned finds tinnitus and somatoform disorder are not medically determinable impairments due to a lack of objective evidence. A medically determinable impairment may not be established solely on the basis of symptoms alone, or on the claimant's allegations regarding symptomatology. There must be evidence from an acceptable medical source in order to establish the existence of a medically determinable impairment. The claimant's allegations of functional limitations caused by tinnitus and somatoform disorder are unsupported. Specifically, the undersigned finds the alleged impairments were not medically determinable because the medical evidence fails to document any substantial complaints, diagnoses, or treatment related to these impairments.*

(Id. at 14-15 (citations omitted).)

Under applicable regulations, a medically determinable impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908, 404.1520a(b)(1), 416.920a(b)(1). To find that Plaintiff's complaints met or equaled Listing 12.07, the mental disability of somatoform disorder, requires the following:

> 12.07 Somatoform disorders:  Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented by evidence of one of the following:
>
> . . . .
>
> 2. Persistent nonorganic disturbance of one of the following:
>
> . . . .

    e. Movement and its control (e.g., coordination disturbance,
psychogenic seizures, akinesia, dyskinesia;

    . . . .

AND

    B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration,
persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended
duration.

Id. pt. 404, subpt. P, app. 1 § 12.07.

  Plaintiff contends that the ALJ "circumvented her responsibility to fully evaluate this Listing by initially ruling at step-two" that the somatoform disorder was not a medically determinable impairment "due to lack of objective evidence." (JS at 3 (citing AR at 14.)  Plaintiff claims the record was "replete with documentation" that he had physical symptoms for which there were no demonstrable organic findings or known physiological mechanisms. (Id.)  For instance, he notes that his treating physician, Dr. Mon-Quen Huang, diagnosed Plaintiff with "a postural tremor, dysmetria, ataxia [with] unclear etiology," based on an MRI that shed no light on Plaintiff's involuntary hand tremors and problems walking. (Id. (citing AR at 244, 246, 263).)  Plaintiff claims, therefore, that substantial evidence supported a somatoform disorder. (Id. at 4.)  He also contends that once the ALJ found at step two that Plaintiff had the severe impairment of "progressive ataxia," there was "sufficient evidence 'to pass the de minimis threshold of step two,'" and the ALJ was then required to evaluate whether the progressive ataxia met or equaled Listing 12.07. (Id. at 4-5 (citation omitted).)  Finally, Plaintiff contends that if the ALJ was unclear whether Dr.

5

Huang's diagnosis of "postural tremor, dysmetria, ataxia [with] unclear etiology" was an adequate diagnosis of somatoform disorder,[3] the ALJ had an affirmative duty to supplement the medical record at step two and did not do so. (Id. at 5.)

Plaintiff's argument fails because despite the ALJ's determination that the alleged somatoform disorder was not a medically determinable impairment, the ALJ nevertheless *did* fully consider whether Plaintiff's mental impairments singly and in combination, met or medically equaled the criteria of Listing 12.07. (AR at 15.) The ALJ found that the part B criteria of Listing 12.07 (as well as of Listings 12.04, 12.06, and 12.09) were not met because Plaintiff's mental impairment caused only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration.[4] (Id.)

Accordingly, even assuming the ALJ erred at step two in finding the alleged somatoform disorder was not a medically determinable impairment, which the Court does not find, any error was harmless because the ALJ properly found at step three that the paragraph B criteria of Listing 12.07 was not met. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (harmless-error rule applies to review of administrative decisions regarding disability); Harrison v. Astrue, 2011 WL 2619504, at *7 (D. Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("Omissions at step two are harmless if the

---

[3] The Court notes that somatoform disorder is a mental disability, characterized by physical symptoms; thus, the diagnosis of ataxia of unknown etiology would not necessarily imply a mental disability absent objective medical evidence of record from an acceptable medical source establishing somatoform disorder. As noted by the ALJ (AR at 14-15), such evidence is missing from Plaintiff's medical record.

[4] Plaintiff does not challenge this finding.

ALJ's subsequent evaluation considered the effect of the impairment omitted at step two.")

**C.     The ALJ Properly Considered Plaintiff's Credibility.**

Plaintiff contends the ALJ's credibility finding is not supported by substantial evidence, and her reasons for discounting his credibility were not clear and convincing.  (JS at 9-11, 14-15.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).  An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other

symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

Here, the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible.

The ALJ cited Plaintiff's ability to engage in activities of daily living that require the same physical and mental abilities as those necessary to obtain and maintain employment. (AR at 17-18.) The ALJ noted that Plaintiff's ability to perform such activities as making his bed, cleaning, watching television, taking care of his roommate's daughter, visiting with friends, performing personal care tasks, shopping in stores with an electric cart, playing board games, and attending birthday parties, is inconsistent with disability. (Id.) Plaintiff's roommate confirmed that Plaintiff could normally perform most activities of daily living. (Id. at 17 (citation omitted).) Daily activities may be grounds for an adverse

credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ sufficiently explained his reasons for discrediting claimant's testimony when he said that the "record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, [and] doing laundry"); Burch v. Barnhart, 400 F.3d 676, at 681 (9th Cir. 2005) (finding adverse credibility based on daily activities may be proper "if a claimant engaged in numerous daily activities involving skills that could be transferred to the workplace").  Thus, it was not error for the ALJ to conclude that Plaintiff's ability to engage in daily activities such as those he described in his adult function report, in his testimony at the hearing, and in his roommate's report, undermines his credibility as to functional limitations.

      Furthermore, the ALJ did not rely on this factor alone.  She also noted that Plaintiff's testimony and statements of record had been inconsistent, specifically with regard to his alcohol consumption and drug abuse, diminishing his credibility.  (AR at 18 (citations omitted).)  For instance, Plaintiff testified that he had smoked marijuana in the past but denied to the psychiatric consultative examiner that he used illicit drugs; on December 13, 2009, he denied alcohol consumption, but on December 12, 2009, a treating nurse smelled alcohol on his breath.  (Id. (citations omitted).)  The ALJ also observed that Plaintiff's receipt of unemployment compensation benefits is facially inconsistent with his allegation of disability.  (Id.)  This is because in order to receive unemployment benefits, he would have had to certify that he was "physically and mentally able, willing, and available to work."  (Id.)  An ALJ may properly rely on inconsistencies in the claimant's testimony to discredit his testimony.  Johnson, 60 F.3d at 1434; Thomas, 278 F.3d at 958-59 (ALJ may properly rely on inconsistencies between

claimant's testimony and claimant's conduct and daily activities).

      The ALJ also diminished Plaintiff's credibility based upon her observations of him at the hearing, finding that his ability to stand during the hearing without the assistance of his walker, undermined his testimony that he used his walker "twenty-four, seven" since April 2010. (AR at 18.) She also observed that Plaintiff only shook during the hearing when he was testifying but stopped shaking when he sat in his chair. (Id.) An ALJ may properly rely on her own observations at the administrative hearing as one factor in support of an adverse credibility determination. Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992).

      Finally, to the extent the ALJ relied on the fact that the objective medical evidence does not support Plaintiff's alleged severity of symptoms, although a lack of objective medical evidence may not be the sole reason for discounting a plaintiff's credibility, it is nonetheless a legitimate and relevant factor to be considered. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, the medical records indicated that Plaintiff received routine, conservative treatment for his complaints of mood disorder, alcohol abuse, depression, anxiety, ankle fracture, ataxia, and degenerative disc disease. This is a valid reason for discounting credibility. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on conservative treatment); Tidwell, 161 F.3d at 602 (ALJ may properly rely on lack of treatment and helpful medication); Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

      Based on the foregoing, the Court finds that the ALJ stated clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's credibility and, therefore, did not arbitrarily discredit his subjective testimony. Thus, relief is not warranted on this claim.

///

**D.   The ALJ Properly Considered the Opinions of Plaintiff's Treating Physician.**

On May 11, 2011, two months prior to the hearing, Plaintiff's treating physician, Mon-Quen Huang, M.D., provided a medical statement regarding Plaintiff's physical abilities and limitations.  (AR at 266.)  In that form, Dr. Huang, who indicated he had first seen Plaintiff in December 2009, also indicated that Plaintiff could work no hours in a day, could stand for no hours, could sit for only fifteen minutes at a time, could not lift on either an occasional or a frequent basis, could never bend, and could only occasionally manipulate with his right and left hands.  (Id.)  Dr. Huang also commented that Plaintiff has "progressive ataxia" and underwent an extensive workup that found no etiology for the condition.  (Id.)  Dr. Huang also indicated the ataxia "has been getting worse and is disabling."  (Id.)  Plaintiff contends that the ALJ "dismissed these opinions without sufficient consideration, in light of the extent of the treatment relationship and the opportunities the physician had to examine" Plaintiff.  (JS at 16.)

The ALJ stated the following regarding Dr. Huang's opinion:

> On December 13, 2009, Dr. Huang unremarkably treated the claimant at UCLA Medical Center for complaints of pain and spastic movements of the extremities.  The claimant complained of tremors and involuntary movements in his extremities.  The claimant indicated that he did not consume alcohol.  The claimant also reported having an unstable gait.  A magnetic resonance imaging (MRI) scan of the claimant's brain conducted on December 17, 2009, was unremarkable.  The impression was mild generalized cerebral and cerebella atrophy and no findings to suggest Wilson disease.  Dr. Huang diagnosed the claimant with ataxia.  Dr. Huang advised the claimant to follow-up with a neurologist.  The claimant was discharged in good condition.  By March 25, 2010, the claimant's ataxia condition improved.  Progress

notes indicate the claimant's MRI scans were mild. Further the notes suggest the claimant's tremors were dissipating. The claimant was also advised to see a genetics specialist and given information about his condition.

. . . .

The undersigned has considered the opinion of the treating physician . . . . The undersigned has given little weight to this opinion because it is brief, conclusory, and inadequately supported by clinical findings. Dr. Huan[g] concluded the claimant was unable to work because of ataxia. The undersigned finds this conclusion has no probative value and rejects it. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and SSR 96-5. Dr. Huan[g] also did not provide an explanation for this assessment or any specific functional limitations that prevented the claimant from working. Dr. Huan[g] primarily summarized the claimant's subjective complaints, diagnoses, and treatment, but he did not provide medically acceptable clinical or diagnostic findings to support the functional assessment. This opinion is also inconsistent with the diagnostic evidence that shows the claimant had normal findings from an MRI scan of his brain. Further, progress notes that indicate the claimant's tremors were subsiding do not support this opinion. This opinion is also inconsistent with the undersigned's personal observations. Dr. Huan[g] opined that the claimant could sit no more than 15 minutes at a time. Yet, the undersigned observed the claimant sat comfortably for the entire hearing that lasted for more than 25 minutes. Accordingly, the undersigned gives this opinion little weight because it is conclusory and inconsistent with substantial evidence.

(AR at 19, 21 (citing id. at 242, 244, 246, 261, 263) (internal citations omitted).)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as it is here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

Preliminarily, the ALJ noted that Dr. Huang's conclusion that Plaintiff is disabled is not entitled to controlling weight and, therefore, was not given special significance. (AR at 21.) While this statement is correct, the Court notes that the fact that a treating physician has rendered an opinion that can be characterized as an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). In this case, the ALJ went on to state specific and legitimate

13

reasons for rejecting Dr. Huang's conclusion.

The ALJ concluded that Dr. Huang's report was conclusory and inconsistent with objective findings. It is not improper for an ALJ to discount a check-the-box type of report such as Dr. Huang's that does not explain the basis of its conclusions. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory check-list report); see also Thomas, 278 F.3d at 957 (an ALJ "need not accept the opinion of any physician, including treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

Moreover, a review of the record confirms that Dr. Huang's treatment notes do not support the extreme assessment he offered on May 11, 2011. (Compare AR at 266 with id. at 242, 244, 246, 261, 263.) Indeed, those notes suggested that the tremors were dissipating (id. at 262), that muscle tone was increased (id.), and that Plaintiff was able to put on his socks and touch his face during conversation without any visible dysmetria[5] (id. at 263). Moreover, the ALJ thoroughly discussed the findings of the orthopedic consultative examiner (id. at 19-20), the neurological consultative examiner (id. at 20), and the psychiatric consultative examiner (id.), and even discounted their opinions that Plaintiff's ataxia and degenerative disc disease did not more than minimally affect his ability to perform basic work activities, as she believed that Plaintiff's physical impairments did affect his capacity to work more than minimally (id. at 21), and these examiners did not have the benefit of considering additional evidence that was available only after the reconsideration hearing, including Dr. Huang's records, and the hearing testimony (id.). Thus, the ALJ gave Plaintiff every benefit of the doubt based on substantial evidence of record.

---

[5] Dysmetria" is an "impaired ability to estimate distance in muscular action." See http://www.merriam-webster.com/medlineplus/dysmetria (last visited Oct. 31, 2012).

Based on the foregoing, the Court finds that the foregoing reasons given by the ALJ for discounting Dr. Huang's opinion were specific and legitimate and supported by substantial evidence of record.

### E. The ALJ Properly Assessed Plaintiff's RFC.

Plaintiff testified that he began using a walker in April 2010 and that he cannot walk without it. (Id. at 39.) In 2009, he began using a cane to ambulate. (Id. at 40.) He testified his condition was worsening. (Id. at 39-41.) Plaintiff contends, therefore, that the ALJ inadequately considered the testimony of the vocational expert ("VE"). (JS at 18.) Plaintiff claims that although the VE testified that the impact of an assistive device and manipulation deficits would be that no work was available, and an inability to stay on task and meet attendance requirements also would yield no available jobs, the ALJ improperly omitted this testimony and these limitations from the decision. (Id.)

In determining a claimant's disability status, an ALJ has a responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see also Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5, *7. As previously discussed, the ALJ properly rejected the extreme opinion of Dr. Huang. Additionally, the Court finds that the ALJ properly gave significant weight to the opinion of the neurological consultative examiner, who found that Plaintiff could perform a range of work at the light exertional level. (AR at 20-21 (giving opinion of neurological consultative examiner "significant . . . but not full weight" because it was supported by diagnostic results, consistent with the normal findings from an MRI scan, supported by progress notes indicating Plaintiff's tremors were subsiding, and verified by the overall conservative course of treatment).)

The record shows, moreover, that the need for an assistive device was contradicted by Plaintiff's reported daily activities, the ALJ's observation that

Plaintiff was able to stand at the hearing without assistance from his walker, and by the March 1, 2011, opinion of the neurological consultative examiner, Sarah Maze, M.D., finding that the results of Plaintiff's examination were "extremely inconsistent," that he was able to handle his wheelchair without issue, and that he appeared to shake only when he was aware he was being examined. (Id. at 20.) Dr. Maze concluded that Plaintiff could stand and/or walk and/or sit for six hours out of an eight-hour workday. (Id. (citing id. at 254).)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

In this case, in her initial hypothetical to the VE, the ALJ included only those limitations she ultimately determined to be Plaintiff RFC, which did not include limitations for use of an assistive device or only occasional fine manipulation bilaterally. (Id. at 44-45.) The VE testified that such an individual could do the jobs of electronics worker, packing machine operator, and house cleaner. (Id. at 45-46.) Even when the ALJ included a limitation to occasional fine manipulation bilaterally (a finding ultimately not included in the RFC), the

VE indicated that Plaintiff could still perform the jobs of packing machine operator and house cleaner.[6] (Id. at 46.)

As the Court concluded above, the record evidence did not support the more extreme limitations and conclusion of Dr. Huang, and that opinion was properly discounted by the ALJ. Accordingly, the ALJ was not obligated to include limitations in her hypothetical to the VE that she did not find to exist. Rollins, 261 F.3d at 857 ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

Because the ALJ properly discounted Dr. Huang's opinion, and gave greater weight to the opinion of Dr. Maze, and because the ALJ's RFC and hypothetical to the VE were supported by the evidence of record, the ALJ appropriately relied on the VE's testimony, and there was no need to include the additional limitation of an assistive device in the hypothetical to the VE. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). In short, the Court finds that the ALJ's RFC was supported by substantial evidence, and she presented a complete hypothetical question to the VE. Thus, there was no error.

**F.     Failure to Consult a Medical Expert.**

The ALJ found that Plaintiff's date last insured is June 30, 2010. (AR at 23.) Plaintiff contends that his disability commenced when he broke his leg in March 2009. (JS at 22 (citing AR at 35).) Following the broken leg, his health deteriorated. (Id.) Plaintiff contends that pursuant to Social Security Ruling 83-

---

[6] When Plaintiff's counsel asked the VE to include the additional limitation of needing to use a walker, only the electronics worker position would be performable. (AR at 47.) The VE also agreed that the need to use a walker *and* a limitation to only occasional fine manipulation bilaterally, would eliminate the electronics worker position as well. (AR at 47.)

20, when the date of onset must be inferred, the ALJ must call on the services of a medical advisor. (JS at 22-23.) Plaintiff contends that the ALJ's failure to call the medical expert was "more than merely harmless error in light of the physical and psychological issues that plague this claimant, coupled with the onset debacle." (Id. at 23.)

The Ninth Circuit has held that an ALJ must call a medical expert where the onset date of the disability is ambiguous or unclear. Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998). But that requirement only applies where a claimant has been found disabled at some time. Id. Here, the ALJ explicitly did not find that Plaintiff was disabled at any time, and she found that Plaintiff had not been disabled through the date he was last insured.[7] As a result, the ALJ was not required to call a medical expert. Sam v. Astrue, 550 F.3d 808, 811 (9th Cir. 2008) (where ALJ explicitly found claimant was not disabled at any time, ALJ was not required by to introduce a medical expert into the process). Thus, there was no error.

## IV.
## ORDER

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

Dated: November 1, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge

---

[7] The Court notes that in her decision, the ALJ indicated that the alleged onset date was August 1, 2008, well before even Plaintiff's claimed date herein of March 2009. (AR at 12, 24.)